DIGGS, McKEEVER & Co., *v.* JESSE R. KIRKLAND & Co., AND LOWE, PATTISON & Co.—TAYLOR & RICHARDSON, Intervenors.

One who is employed by plaintiffs at a fixed salary—but who was to have one-third of the profits, if the one-third exceeded his salary—is a competent witness.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Halsey* and *H. H. Strawbridge,* for plaintiffs and appellants. *Clark, McConnell,* and *Bayne,* for defendants and intervenors.

VOORHIES, J.* The plaintiffs sue on an accepted draft drawn by *J. R. Kirkland & Co.,* of Brandon, Mississippi, on *Lowe, Pattison & Co.,* of New Orleans, for the sum of $1500, duly protested for non-payment by the acceptors, of which the drawers were duly notified. They also claim of *J. R. Kirkland & Co.,* the sum of $2250 03, for goods invoiced and shipped to them, including an item of $134 37, as the balance due them by the firm of *J. R. Kirkland & Brother,* as stated in the account annexed to their petition, at the foot of which the following credit is noted :

---

* OGDEN, J., did not sit in this case, having been of counsel when the case was submitted.

"By their draft on and accepted by *Lowe, Pattison & Co.*, protested, $1500."

Under a writ of attachment, sued out by the plaintiffs, the Sheriff seized two hogsheads of sugar, which were afterwards bonded by *Taylor & Richardson*, intervenors, who claimed the ownership thereof.

*D. J. Phelps, W. H. Wright*, and *Wright, Williams & Co.*, were garnisheed. But their answers to the interrogatories propounded to them by the plaintiffs, fully exonerate them from any liability.

The defendants, *J. R. Kirkland & Co.*, claim the sum of $889 45, as a balance resulting in their favor from two drafts drawn by them in October, 1851, on *Wright, Williams & Co.*, each for the sum of $1500, after crediting plaintiffs with the amount of invoices charged in their account.

It is proper we should here notice a bill of exceptions found in the record. On the trial the testimony of *Edward Duncan* was objected to on the score of interest. This witness stated, on his *voir dire*, that he was employed by plaintiffs at a fixed salary, but if one-third of the profits exceeded his salary, then he was to receive said profits in lieu thereof. The objection, we think, was properly overruled by the District Judge. The interest was contingent and too remote, in our opinion, to exclude the witness; it was such an interest as could only affect his credibility. According to the construction given to the provisions of our Code in relation to the competency of witnesses, it is clear that the interest which legally excludes a witness must be the prospect of gaining an advantage or profit by the judgment in the cause in which he may be called upon to testify, and which would be an immediate consequence of such judgment. 4 L. R. 201; 18 ibid. 360; 5 N. S. In the case of *Burke* v. *Breazeale et al*, 1 R. R. 74, it was held, that although a witness was entitled ·to ten per cent. commission on the *amount recovered* for his fee as an attorney, yet he was a competent witness.

It is urged that the drafts on *Wright, Williams & Co.*, have been improperly and illegally imputed to the payment of the plaintiffs' claim against *J. R. Kirkland & Brother*. When the firm of *J. R. Kirkland & Brother* was superseded by that of *J. R. Kirkland & Co.*, which was composed of the same partners, with the addition of *Richardson*, it was indebted to the plaintiffs in a balance of $134 37, as stated in the account referred to in the testimony of *Edward Duncan*. This balance resulted after allowing *J. R. Kirkland & Brother*, as credits, the two drafts of $1500 each, one on *Lowe, Pattison & Co.*, and the other on *Wright, Williams & Co. J. R. Kirkland & Co.* in their answer expressly declare that as the draft on *Lowe, Pattison & Co.* was not paid·by the acceptor, it therefore created no indebtedness, and limited their demand to the two drafts on *Wright, Williams & Co.* As the draft on *Lowe, Pattison & Co.* had already been credited to the account of *J. R. Kirkland & Brother*, it was evidently credited in error to the account of *J. R. Kirkland & Co.*, as stated by the witness *Duncan*. The draft on *Wright, Williams & Co.*, unaccounted for, should, we think, have been credited to this account. The testimony of *Michael Duncan* shows, that he went to Brandon, Mississippi, in December, 1851, when he there presented to *J. R. Kirkland & Co.* plaintiffs' account; *Richardson* was present in the store when he presented it to *H. Kirkland*, who said that they were not then able to pay it, but that he or his brother would go to the city in the course of two or three weeks, and would settle it. He saw *J. R. Kirkland* in the evening. No objections were made, by any of the parties, to the account presented by him, which he left with *J. R. Kirkland & Co.* Why

have not *J. R. Kirkland & Co.* produced this account? It was certainly approved, and we may fairly presume it was identical with the one under consideration. In their letter to the plaintiffs of the 10th March, 1852, they say : "You were aware of our having been burnt out, and you must have known that it required some little time to arrange our business. We had a desire to settle our account with you, and all other of our creditors, at the earliest possible moment, but there is little or no money in the country, and we are unable to make collections at present, and, consequently, we are unable to liquidate our debts until collections are made. We have just learned from *Messrs. Richardson & Taylor* that you had *collected a part of the debt due you* by attaching some goods belonging to them." From the tenor of this letter they evidently considered themselves indebted to the plaintiffs when this suit was instituted ; and it is equally evident that they could not have been so without having considered the drafts on *Lowe, Pattison & Co.* and *Wright, Williams & Co.*, as properly credited to the account of *J. R. Kirkland & Brother*. That *Richardson* so considered it, is strongly indicated in the letter of *Taylor & Richardson*, written by himself to the plaintiffs, and on the same day that the letter of *J. R. Kirkland & Co.* was written, the 10th of March, 1852, in which they say : "We are in receipt of information this evening that two hogsheads of sugar, purchased of *Messrs. Wright, Williams & Co.*, have been attached at your instance. We hereby authorize you to *Cr. J. R. Kirkland & Co. for one-half of the cost of the sugar*, which shall have early attention. If this arrangement will suit you, forward the sugar immediately as we are much in want of it. The writer thinks there is no cause of alarm about the debts of *J. R. Kirkland & Co.*, and will be much disappointed if all the debts due by them are not paid in six months." Why did *Richardson* propose to credit *J. R. Kirkland & Co.* with one half of the cost of the sugar, if he did not consider himself liable as one of the members of that firm? Why express disappointment if all its debts were not paid in six months? On the whole, we are of opinion that the drafts on *Wright, Williams & Co.* and on *Lowe, Pattison & Co.* were imputed to the payment of the account of *J. R. Kirkland & Brother*, from which the balance of $134 37 resulted, in accordance to the understanding of all the parties.

There is no evidence of any contract stipulating the payment of interest as alleged by the plaintiffs. We do not think the claim of the plaintiffs for damages on the draft well founded, under the statute. The evidence shows that the sugar attached belonged to *Taylor & Richardson*, by whom it was bonded. But, according to the consent given in their letter, one-half of its proceeds must be applied to the payment of the plaintiffs' claims.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed. That the plaintiffs do recover of the defendants, *Jesse R. Kirkland, William H. Kirkland, William H. Richardson, B. M. Lowe, Alexander Pattison,* and *T. N. Ward,* as syndic of the insolvent estate of *William H. Pattison, in solido,* the sum of fifteen hundred dollars, with legal interest from the 14th of January, 1852, the date of protest, and three dollars cost of protest, and that said plaintiffs do recover of *Jesse R. Kirkland, William H. Kirkland,* and *William H. Richardson, in solido,* the further sum of seven hundred and fifty dollars and three cents, with legal interest from judicial demand, the costs of both Courts to be borne by all the defendants.